IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-cr-58-2 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING DEFENDANT** |
| | : | **GARRY HOLMES' MOTION TO** |
| GARRY HOLMES, | : | **SUPPRESS IDENTIFICATION** |
| Defendant. | : | |

This matter is before the Court on Defendant Garry Holmes' Motion to Suppress Identification (Doc. 50). The Government opposes the motions (Doc. 60). For the reasons set forth below, Holmes' motion will be **DENIED**.

I. **BACKGROUND**

A. **Facts**

On January 10, 2020, assailants robbed W.R. at gunpoint. They stole his Mercedes and shot W.R. several times, including in the legs and head.

On February 6, 2020, a "blind administrator" from the Cincinnati Police Division administered a photo lineup to W.R. (Defendant's Exh. A, Doc. 50-1 at PageID 138.) As indicated on the initialed form, the administrator "do[es] not know who the alleged perpetrator of the offense now being investigated is," "do[es] not know which, if any, of the photographs is of the alleged perpetrator," and notes "it is just as important to clear innocent person(s) from suspicion as it is to identify the guilty party." (*Id.*) The initialed form further instructs the witness to "take as much time as you need when viewing each photograph," "[i]ndicate whether the photograph being viewed is of the perpetrator of the offense being investigated and how

certain you are of this identification," and "[d]o not tell other witnesses that you have or have not identified anyone." (*Id.*)

The administrator then sequentially showed W.R. six photos. (Doc. 50-1 at PageID 139–45.) All six photographs depict black men of similar age with facial hair and multiple tattoos on their faces. (*Id.*)

W.R. identified photo number three, stating, "I'm 100% sure" and "I will never forget that face a day in my life." (Doc. 50-1 at PageID 139.) W.R. further stated, "I gave up everything to them, and they still shot me." (*Id.*) Per the written instructions on the police form, W.R. initialed the box for photograph number three, now known to depict Defendant Garry Holmes. (*Id.*)

### B. Procedural Posture

A grand jury indicted Holmes and his Co-Defendant Eric Lang on charges of carjacking, in violation of 18 U.S.C. §§ 2119 and 2119(2) and using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The grand jury also charged Holmes with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).

Holmes moves to suppress W.R.'s pretrial identification of him and any in court identification of him as a perpetrator. (Doc. 50.) Holmes claims that he did not commit this crime so W.R.'s identification of him "must have been" as "a result of a tainted and suggestive process." (*Id.* at PageID 135.) The Government opposes Holmes' motion. (Doc. 60.)

## II.   APPLICABLE LEGAL STANDARD

To suppress identification evidence, a defendant "must show that the process was 'both suggestive and unnecessary' so as to give rise to a 'substantial likelihood of misidentification.'" *United States v. Felix*, ___ F.App'x ___, 2021 WL 1102304, *3 (6th Cir. March 23, 2021)

(quoting *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012)). If the defendant demonstrates such unnecessary suggestiveness, "a court must then consider the totality of the circumstances surrounding the identification to evaluate its reliability." *Id.* (citing *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005)). Pursuant to this two-step inquiry, courts should suppress tainted identifications where "the indicators of a witness' ability to make an accurate identification are outweighed by the corrupting effect of law enforcement suggestion." *Ojile v. Smith*, 779 F. App'x 288, 293 (6th Cir. 2019) (quoting *Perry*, 565 U.S. at 239).

## III. ANALYSIS

In the case at bar, Holmes has offered no evidence whatsoever that the identification process was suggestive, and the Court is unable to discern any from the lineup documentation submitted. The lineup administrator did not know which, if any, of the photographs depicted the alleged perpetrator. (Doc. 50-1 at PageID 138.) The administrator informed the witness that the photographs may or may not include the alleged perpetrator being investigated and that the investigation would continue whether or not the witness made an identification. (*Id.*) The photographs were shown to the witness sequentially, rather than simultaneously, to reduce pressure on the witness to make an identification.

In addition, the included photographs all feature black men of similar age and appearance with multiple facial tattoos. If any photograph stands out from the others, photograph four appears darker than the other photographs. (Doc. 50-1 at PageID 143 compared to PageID 140–42 and 144–45.) However, photograph four depicts a person other than Holmes. Holmes' photograph is number three. (*Id.* at PageID 140.)

Holmes contends that "[t]he Cincinnati Police Division blind administrator policy/process could not have been followed" and there "must have been" a suggestive lineup

3

because the witness identified Holmes as a perpetrator. (Doc. 50 at PageID 135.) However, as the Supreme Court has stated, "When no improper law enforcement activity is involved," lineup reliability is sufficiently tested by the opportunities designed for that purpose, including "vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Perry*, 565 U.S. at 233. As Holmes failed to meet his burden to demonstrate improper law enforcement activity, the identification here must be tested at trial.

## IV. CONCLUSION

Accordingly, Defendant Garry Holmes' Motion to Suppress Identification (Doc. 50) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Susan J. Dlott
United States District Court