IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-cr-58-2 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING DEFENDANT GARRY HOLMES' MOTION TO SUPPRESS** |
| GARRY HOLMES, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Garry Holmes' Motion to Suppress (Doc. 53). The Government opposes the motion (Doc. 63). The Court conducted an evidentiary hearing on June 1, 2021. For the reasons set forth below, Holmes' motion will be **DENIED**.

## I. BACKGROUND

### A. Facts

On January 10, 2020, assailants robbed W.R. at gunpoint. They stole his Mercedes and shot W.R. several times, including in the legs and head.

Law enforcement officers ran the ballistics evidence from the carjacking through the National Integrated Ballistic Information Network ("NIBIN"). A NIBIN lead linked the firearm used in this case to previous shootings, including one in December 2019.

W.R. told law enforcement officers that he had previously been incarcerated at Lebanon Correctional Institution with two of his assailants, "Lava" (who has since been identified as Defendant Eric Lang) and another person with specific facial tattoos whose name W.R. did not know. ATF Task Force Officer Joe Ruchti identified Defendant Garry Holmes based on the relevant incarceration dates and tattoo descriptions. Officer Ruchti further learned that during December 2019 and January 2020, Holmes was on parole and required to wear a GPS

monitoring device. Furthermore, Holmes' mobile telephone data indicated he had been in contact with Eric Lang, and W.R. identified Garry Holmes from a photographic lineup.[1]

On March 2, 2020, ShotSpotter—Cincinnati Police Department's gunshot detection system—alerted officers to a shooting at 3:17 a.m. between 313 and 315 Forest Avenue. NIBIN matched ballistics evidence recovered from the Forest Avenue shooting to the January 10, 2020 carjacking in this case.

Officer Ruchti obtained a "96 Hour Report" of Holmes' GPS data from the Ohio Parole Authority which indicated that Holmes had been at the scene of the March 2, 2020 shooting. Officer Ruchti then obtained Holmes' historical GPS data and learned that his GPS location also matched the December 2019 shooting and the January 10, 2020 carjacking and shooting in this case.

Officer Ruchti ran an Ohio Law Enforcement Gateway ("OLEG") inquiry for Garry Holmes and learned that Holmes owned a Chevrolet sedan and that his driver's license was currently suspended.[2] Anticipating that Holmes likely possessed the firearm, Ruchti sought assistance from Ohio State Highway Patrol Officers to conduct a "high risk" investigatory stop of Holmes' vehicle on March 3, 2020. As another officer obtained Holmes' minute by minute GPS location information to ensure that he was in the Chevrolet sedan registered to him, uniformed Troopers Kyle Doebrich and Brett Lee effectuated a traffic stop of Holmes' car.

Dashcam videos entered into evidence depicted a Chevrolet sedan with heavily tinted windows. Troopers Doebrich and Lee used their marked cruisers to block the sedan and then

---

[1] Holmes previously moved to suppress W.R.'s pretrial identification. (Doc. 50.) This Court denied that motion on May 6, 2021. (Doc. 65.)
[2] The parties offered conflicting evidence regarding the status of Holmes' driver's license from February 25, 2020 to March 11, 2020. However, it is undisputed that OLEG reported either that Holmes' license was suspended during that period or that Holmes failed to reinstate it after the suspension. Either way, Ruchti was aware that Holmes lacked a valid driver's license on March 3, 2020.

2

ordered Holmes and two passengers out of the car. Trooper Lee can be heard remarking on the strong smell of "raw marijuana" emanating from the vehicle, and Trooper Doebrich informed Trooper Lee that he had observed through the front windshield Holmes making furtive movements into the back seat. Trooper Doebrich testified that he believed Holmes was hiding something. Based on the furtive movements and smell of marijuana, Troopers Lee and Doebrich decided to search Holmes' automobile. The search produced marijuana in a sunglass holder above the front seat and a Smith & Wesson .40 caliber firearm in the armrest that folds down from the rear seat.

### B. Procedural Posture

A grand jury indicted Holmes and his Co-Defendant Eric Lang on charges of carjacking, in violation of 18 U.S.C. §§ 2119 and 2119(2) and using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The grand jury also charged Holmes with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).

Holmes moves to suppress the evidence seized during the March 3, 2020 traffic stop (Doc. 53). Holmes claims the vehicle search resulted from nothing more than an inchoate hunch and, therefore, violated his Fourth Amendment right to be free from unreasonable search and seizure. Holmes further moves to suppress all evidence subsequently obtained as fruit of the poisonous tree. The Government opposes Holmes' motion. (Doc. 63.)

## II. APPLICABLE LEGAL STANDARD AND ANALYSIS

### A. Initial Stop of Holmes' Automobile

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Thus, evidence seized during an illegal traffic stop "must

3

be suppressed as 'fruits of the poisonous tree.'" *Id.* (citing *United States v. Hill*, 195 F.3d 259, 264 (6th Cir. 1999) (quoting *Wong Sun v. United States*, 371 U.S. 471, 484 (1963))).

It is well-established, however, that a police officer "lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). Even without probable cause, the Fourth Amendment permits officers to make brief investigatory stops, known as "*Terry* stops," if they have "reasonable suspicion of criminal activity. *United States v. Sheckles*, 996 F.3d 330, 343 (6th Cir. 2021). Indeed, "[t]he officers need only 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *Kansas v. Glover*, ⎯ U.S. ⎯, 140 S. Ct. 1183, 1187 (2020)).

*Terry* stops are not limited to investigation of crimes that are in the process of being or are about to be committed. Rather, "[t]he police may also engage in *Terry* stops to investigate past crimes." *Id.* As the Supreme Court concluded, "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Id.* (quoting *United States v. Hensley*, 469 U.S. 221, 229 (1985)).

Officers in this case had both probable cause to believe a traffic violation had occurred and reasonable suspicion based on articulable facts that Holmes was involved in a completed felony when they stopped his vehicle on March 3, 2020. As to the traffic violation, Holmes' windows were illegally tinted, a fact he admitted in his brief. (Doc. 53 at PageID 159.) In addition, officers had probable cause to believe—based on the OLEG inquiry—that Holmes was driving without a valid, active driver's license.

4

Officers also had reasonable suspicion that Holmes was involved in at least one completed felony based on the following specific, articulable facts: (1) NIBIN analysis of ballistics evidence recovered from the March 3, 2020 shooting matched that of the firearm used in the January 10, 2020 carjacking and shooting in this case and a December 2019 shooting; (2) Holmes' GPS location data put him at the scene of all three shootings; (3) the victim of the January 10, 2020 carjacking and shooting had previously identified Holmes as one of the perpetrators; and (4) GPS location information indicated that Holmes—to whom the Chevrolet sedan was registered—was inside the car at the time of the traffic stop. Thus, the officers' initial stop of Holmes' vehicle unquestionably passes Fourth Amendment muster.

### B. Search of Holmes' Automobile

Holmes next contends that, even if the initial stop was constitutionally permissible, the subsequent vehicle search was not. The Court disagrees.

A traffic stop is, indeed, limited by its purpose and may "last no longer than is necessary to effectuate th[at] purpose." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion)). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (citation omitted).

However, "[t]he permissible scope and duration of a stop depends on the officer's reasons for undertaking it." *Sheckles*, 996 F.3d at 344. If officers learn new information during the stop, "[t]his new information can create reasonable suspicion to detain the driver longer in order to investigate the other crimes." *Id.* at 345; *see also United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1998) ("[O]nce the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable

5

suspicion that criminal activity was afoot."). The Sixth Circuit Court of Appeals "has repeatedly held that officers have probable cause to search a vehicle 'when they detect the odor of illegal marijuana coming from' it." *Sheckles*, 996 F.3d at 345 (quoting *United States v. Brooks*, 987 F.3d 593, 599–600 (6th Cir. 2021)).

In addition, pursuant to the automobile exception to the Fourth Amendment's general warrant requirement, "police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). The Court must examine the "objective facts known to the officers at the time of the search" to determine whether probable cause existed under the totality of the circumstances. *Id.* at 648. "Probable cause requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Nuyen*, 833 F.App'x 646, 646–47 (6th Cir. 2021) (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)).

In this case, dashcam videos depict Trooper Lee inquiring about a strong odor of raw marijuana emanating from Holmes' car. In addition, Trooper Doebrich witnessed through the windshield Holmes making furtive movements into the back seat of the vehicle. Trooper Doebrich, the dashcam video revealed, made multiple requests to Holmes to "show me your hands" because Holmes, Trooper Doebrich testified, continued to reach into the back seat during the traffic stop. ATF officers had briefed Trooper Doebrich on the evidence linking Holmes to the shootings and the likelihood that Holmes, a felon on parole at the time, possessed the firearm. Thus, the combination of the marijuana odor emanating from the car, the ready mobility of

Holmes' automobile, and the furtive movements of a parolee associated with multiple shootings established probable cause to search Holmes' car.

### III. CONCLUSION

Accordingly, Defendant Garry Holmes' Motion to Suppress (Doc. 53) is hereby **DENIED**.

IT IS SO ORDERED.

Judge Susan J. Dlott
United States District Court